UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLADOKUN OWOYEMI,

Plaintiff,

-against-

DB USA CORE CORPORATION,

Defendant.

Case No. 1:25-cv-04560 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Oladokun Owoyemi ("Plaintiff") brings this action against his former employer DB USA Core Corporation ("Deutsche Bank" or "DB"), alleging that DB discriminated and retaliated against him on the basis of his race and disability. Now before the Court is DB's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim on which relief can be granted. For the following reasons, the Court GRANTS in part and DENIES in part DB's motion.

## BACKGROUND

### I. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and taken as true for purposes of this motion. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024).

Plaintiff, a Black man, worked for DB from July 2014 to January 2025. *See* Dkt. 44 ("Am. Compl." or the "Amended Complaint") ¶¶ 17, 87-88. He was promoted to Assistant Vice President in DB's Anti-Financial Crime ("AFC") Division in December 2015, and he "remained and excelled" in that position for the next nine years, "consistently receiving positive performance evaluations" and making numerous contributions to DB's operations. *Id.* ¶¶ 18-23.

On January 20, 2022, Plaintiff was diagnosed with "subcutaneous t-cell lymphoma, a serious form of skin cancer." *Id.* ¶¶ 25-26. He notified his manager of the diagnosis shortly after receiving it, *id.* ¶ 27, and he began treatment in March 2022, *id.* ¶ 28. Between March and July 2022, Plaintiff received treatment three times per week and continued to work full time at DB, "ma[king] up for any hours missed." *Id.* ¶¶ 29-31. He began to have "severe" side effects from treatment, however, such as sleeplessness, exhaustion, and weight loss. *Id.* ¶ 31. In June 2022, recognizing that these side effects were impeding his work, Plaintiff filed for short-term disability benefits through AFLAC, DB's third-party benefits administrator. *Id.* ¶ 32. He alleges that AFLAC's employees were "hostile . . . and seemed intent on hampering his short-term disability claim." *Id.* ¶ 34. Plaintiff sought help from DB Human Resources, and the "lead" of that department assigned "a junior employee" to assist him. *Id.* ¶ 33. Plaintiff alleges that "[i]t was difficult to schedule timely communications" with that employee, and that the Human Resources department failed to guide, advocate for, or otherwise assist him in the process with AFLAC, even though "this was a standard service" DB provided "to other employees." *Id.* ¶¶ 34-35. According to Plaintiff, non-Black DB employees were provided with substantially more assistance from DB's HR department on their applications for short-term disability. *Id.* ¶ 39; *see also id.* ¶¶ 40-41 (alleging that two non-Black DB employees in Plaintiff's division were granted short-term disability after receiving assistance from HR). In July 2022, Plaintiff took unpaid leave from work while awaiting a decision on his short-term disability request, which was ultimately denied in August 2022. *Id.* ¶¶ 36-37. He appealed the denial and his appeal was denied. *Id.* ¶¶ 42-43.

On October 24, 2022, although his treatment was still ongoing, Plaintiff returned from leave. *Id.* ¶¶ 45-46. In December 2022, Plaintiff requested an accommodation to work from home, because treatment made his commute to work "physically unbearable." *Id.* ¶ 50. In 2023,

Plaintiff's treatment became even more aggressive, requiring him to attend multiple appointments per week that caused side effects such as "intense fatigue," "significant weight loss, [and] nausea." *Id.* ¶¶ 47-49. He alleges that DB, in response to his accommodation request, allowed him only temporary periods of remote work, with gaps in between. *Id.* ¶ 52. Specifically, DB permitted Plaintiff to work from home over the following intervals: December 12, 2022, to May 12, 2023; July 17, 2023, to October 15, 2023; and January 16, 2024, to July 1, 2024. *Id.* ¶¶ 52-53. According to Plaintiff, DB did not "engag[e] in a meaningful interactive process to determine an appropriate permanent accommodation." *Id.* ¶ 52; *see also id.* ¶ 54.

In August 2024, after returning to work at the conclusion of his third work-from-home period, Plaintiff again requested an accommodation to work from home, and DB "ignored" him. *Id.* ¶¶ 53, 55-57. Although he submitted "additional medical documentation" in further support of his request in September 2024, he alleges that DB did not schedule an interactive process meeting, did not request any clarification regarding his request, did not propose an alternative accommodation, and did not provide a written explanation as to why the work-from-home arrangement he proposed was not feasible. *Id.* ¶¶ 58-59. Plaintiff alleges that non-Black employees in his and other divisions who requested accommodations received them, without having to resubmit requests and without having "unexplained gaps in coverage." *Id.* ¶¶ 63-65.

On December 5, 2024, DB informed Plaintiff that his position had been relocated from New York to Jacksonville, Florida. *Id.* ¶¶ 71-72. DB gave Plaintiff three weeks to decide between accepting the relocation (and an accompanying salary reduction, *see id.* ¶ 75), accepting a severance package, or resigning without severance. *Id.* ¶¶ 72-73. On December 20, 2024, Plaintiff retained counsel. *Id.* ¶ 79. Thereafter, DB told him that it "decided not to relocate or restructure [his] position." *Id.* ¶ 80; *see also id.* ¶ 82. By then, however, DB had already announced Plaintiff's termination and "reassigned some of his work responsibilities." *Id.* ¶¶ 81-

82. On January 24, 2025, one of DB's HR representatives informed Plaintiff that DB had accepted his voluntary resignation, even though Plaintiff alleges that he "had not submitted any resignation." *Id.* ¶ 87; *see id.* ¶ 71. On February 4, 2025, DB again "contacted Plaintiff, purportedly to accept his voluntary resignation and informed him that his health insurance would be terminated shortly thereafter." *Id.* ¶ 91.

On these facts, Plaintiff alleges seven causes of action: discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; discrimination under 42 U.S.C. § 1981 ("Section 1981"); discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and discrimination, retaliation, and failure to engage in a cooperative dialogue under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* *See* Am. Compl. ¶¶ 110-70. He seeks, among other relief, damages for all lost wages and benefits. *Id.* at 30.

## II. Procedural Background

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 28, 2025. *Id.* ¶ 10. On March 11, 2025, the EEOC issued Plaintiff a right-to-sue letter, *id.* ¶ 11, a copy of which he filed with the Amended Complaint, *see* Dkt. 44-1. Plaintiff commenced this action on May 30, 2025. *See* Dkt. 1; *see also* Dkt. 6 ("Compl." or the "Complaint"). On August 8, 2025, DB moved to dismiss the Complaint. *See* Dkt. 21. The Court denied that motion without prejudice to refile after the parties had participated in mediation. Dkt. 27. The parties attended mediation and, on October 22, 2025, the mediator reported that mediation had been unsuccessful. *See* Dkt. 28. On November 3, 2025, DB again moved to dismiss the Complaint. *See* Dkt. 29. On December 1, 2025, Plaintiff moved for leave to amend the Complaint, *see* Dkt. 35, and the Court granted the motion on December

19, 2025, *see* Dkt. 43. Plaintiff filed the Amended Complaint on December 22, 2025. *See generally* Am. Compl.

On January 12, 2026, DB moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim on which relief can be granted. *See* Dkt. 45; Dkt. 46 ("Br."); Dkt. 47; Dkt. 48. Plaintiff filed his opposition brief on February 2, 2026, Dkt. 52 ("Opp."), and DB filed a reply brief on February 19, 2026, Dkt. 55 ("Reply"). The motion is thus fully briefed.

**LEGAL STANDARD**

Under Rule 12(b)(6), a plaintiff's "complaint may be dismissed to the extent that it 'fail[s] to state a claim on which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 77 (2d Cir. 2022) (alteration adopted) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). However, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.) (citation omitted). Rather, to survive a motion to dismiss, a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**DISCUSSION**

DB seeks to dismiss the Amended Complaint on multiple grounds. First, as a threshold matter, it argues that Plaintiff's ADA and Title VII claims must be dismissed because the EEOC issued its right-to-sue letter only forty-two days after Plaintiff filed his discrimination charge,

rather than waiting 180 days as the statutes require. *See* Br. at 9-10. Second, DB argues that Plaintiff has failed to allege either an adverse employment action or a causal connection between any such action and his race, and therefore that he has failed to state a claim for race discrimination under Section 1981, Title VII, the NYSHRL, or the NYCHRL. *See id.* at 10-20. Third, DB argues that Plaintiff failed to allege that his accommodation requests were ever denied, and that he failed to allege a causal connection between his disability and any adverse employment action, and therefore he fails to state a claim for disability discrimination and failure to accommodate under the ADA, the NYSHRL, or the NYCHRL. *See id.* at 20-22. Fourth, DB argues that Plaintiff failed to allege a causal connection between his protected activity and any adverse employment action, and therefore Plaintiff fails to state a claim for retaliation under the ADA or the NYCHRL. *See id.* at 24-26. Fifth, DB argues that Plaintiff fails to adequately allege, beyond conclusory assertions, that DB failed to engage in a cooperative dialogue with him as required by the NYCHRL. *See id.* at 26-28. Sixth, and finally, DB argues that even if any of Plaintiff's claims survive this motion, the Court should dismiss any claim for front or back pay damages, because Plaintiff declined DB's offer "to remain employed and/or of reinstatement while receiving full pay." *See id.* at 28. The Court addresses DB's threshold argument first and will then proceed to DB's other arguments in the order of Plaintiff's causes of action.

## I. The Early Right-to-Sue Letter Does Not Bar the ADA and Title VII Claims

The Court begins with the question of Plaintiff's right-to-sue letter. Before a plaintiff may file an ADA or Title VII claim in federal court, "the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (Title VII); *see* 42 U.S.C. § 2000e-5(e) ("A charge under this section shall be filed within one hundred and eighty days after the alleged

unlawful employment practice occurred[.]"); 42 U.S.C. § 12117(a) (ADA provision adopting "[t]he powers, remedies, and procedures set forth in section[] . . . 2000e-5 . . . of this title"); *see also Anderson v. City of New York*, 712 F. Supp. 3d 412, 425 (S.D.N.Y. 2024) ("Exhaustion [of Title VII and ADA claims] requires timely filing of charges with the EEOC and obtaining notice of the right to sue."). If the EEOC dismisses the charge, or if 180 days have passed and the EEOC has not completed its investigation, the EEOC "shall so notify" the complainant, who then has ninety days to file suit in federal court. 42 U.S.C. § 2000e-5(f)(1). This notification is communicated through what is known as a right-to-sue letter. *See Duplan v. City of New York*, 888 F.3d 612, 621-22 (2d Cir. 2018) ("[A] Title VII plaintiff generally must . . . file an action in federal court within 90 days of receiving a right-to-sue letter from the agency."); *see also Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (per curiam) (applying same rule to ADA). Plaintiff filed his charge on January 28, 2025, and the EEOC issued his right-to-sue letter forty-two days later, on March 11, 2025. Am. Compl. ¶¶ 10-11. DB, reviewing the statutory scheme, concludes that it "does not authorize the EEOC to issue a [right-to-sue] letter for a charge it has not dismissed less than 180 days after the charge is filed." Br. at 9. Therefore, says DB, Plaintiff's right-to-sue letter is invalid, and his Title VII and ADA claims must be dismissed. *Id.* at 10.

Courts in this Circuit have largely rejected the argument DB advances here. *See, e.g.*, *Huerta v. J.D. Workforce, Inc.*, No. 23-cv-05382 (KMK), 2025 WL 674329, at *12 (S.D.N.Y. Mar. 3, 2025) (collecting cases). Those courts have persuasively explained that Title VII's statutory text provides two scenarios — (1) dismissal of the charge, or (2) the passage of 180 days without conclusion of an investigation into the charge — where the EEOC *must* issue a right-to-sue letter, which "does not mean that these are the *only* two situations in which it can issue a right to sue [letter]." *Mwangi v. Passbase, Inc.*, No. 21-cv-06728 (ER), 2022 WL

2133734, at *4 (S.D.N.Y. June 14, 2022); *see also Hernandez v. Premium Merch. Funding One, LLC*, No. 19-cv-01727 (WHP), 2020 WL 3962108, at *5 (S.D.N.Y. July 13, 2020) ("In simple terms, § 2000e-5(f)(1) states that if X occurs, or if Y occurs, then the Commission shall issue a notice of right to sue. However, the word 'if['] together with 'shall' does not bar the conclusion that even when neither of the two conditions occurs, the Commission still may issue a notice of right to sue." (quoting *Figueira v. Black Ent. Television, Inc.*, 944 F. Supp. 299, 305 (S.D.N.Y. 1996))). The Court agrees with that interpretation of the statutory text, providing a permissive, rather than mandatory standard, and finds that Plaintiff's right-to-sue letter comports with it.

Moreover, the EEOC's own regulations permit the agency to issue a right-to-sue letter "at any time prior to the expiration of 180 days from the date of filing," so long as the complainant requests it and the EEOC "determine[s] that it is probable that [it] will be unable to complete its administrative processing of the charge within 180 days." 29 C.F.R. § 1601.28(a)(2); *see also* Dkt. 44-1 (Plaintiff's right-to-sue letter, stating "[t]he EEOC has granted your request for a Notice of Right to Sue"). "[M]any district courts in this district" held that this "regulation [wa]s sound" when analyzing it under *Chevron*'s "two-step framework," *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 179 (S.D.N.Y. 2023) (collecting cases), though the Second Circuit did not weigh in on the matter, *see Hankins v. Lyght*, 441 F.3d 96, 101 (2d Cir. 2006) ("We have not decided whether the regulation allowing early issuance of right-to-sue notices, 29 C.F.R. § 1601.28(a)(2), is a permissible construction of Section 2000e-5. We express no opinion on the issue here[.]").

Of course, *Chevron*'s framework for analyzing the validity of an administrative agency's own regulations has been displaced. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 396 (2024). And DB argues that, under "post-*Loper Bright* authority," Reply at 11, the EEOC's regulation is contrary to Title VII's text and, therefore, invalid, *see* Br. at 9-10; Reply at 11-12.

This authority appears to be one case DB cited in its opening brief, *Prichard v. Long Island University*, in which the district court held that 29 C.F.R. § 1601.28(a)(2) "conflicts with [Title VII's] statutory text." No. 23-cv-09269 (EK) (LB), 2025 WL 2163390, at *2 (E.D.N.Y. July 30, 2025); *see* Br. at 9. That court explained:

> The relevant provision states that if the EEOC has dismissed a charge, or alternatively if 180 days have passed and it has not initiated a lawsuit or completed conciliation, it "shall so notify the person aggrieved." The provision then states that the recipient of "such notice" may bring a civil suit in federal court within ninety days. The phrase "such notice" indicates that the type of notice giving an aggrieved party the right to sue is limited to the type of notice discussed earlier in the provision, *i.e.*, notice that the charge has been dismissed or that 180 days have passed without either of the two relevant conditions occurring.

*Prichard*, 2025 WL 2163390, at *2 (citations omitted). But even as the *Prichard* court focused on the statute's use of "such notice," it overlooked the use of "within." Indeed, Title VII authorizes the EEOC to issue a right-to-sue letter "if *within* one hundred and eighty days from the filing of such charge" it has not concluded its investigation. 42 U.S.C. § 2000e-5(f)(1) (emphasis added). As one court in this District has explained, "[t]he use of the word 'within' suggests that Congress anticipated that the decision by the [EEOC] could happen in less than 180 days"; "Congress might have established a clear end date by" omitting *within* from the statute but chose, instead, to use it; and, therefore, "[t]he language of this section of the statute does not support the conclusion that the [EEOC] must wait for 180 days after it receives a charge to issue a right-to-sue letter." *Germain*, 655 F. Supp. 3d at 180; *see also Stashak v. Phreesia, Inc.*, 819 F. Supp. 3d 287, 295 (S.D.N.Y. 2026) (casting doubt on *Prichard*'s statutory analysis in light of *Germain*). These two analyses of the statute do not necessarily conflict with each other: Under *Prichard*'s reading, the use of "such notice" limits the right to sue "to the type of notice discussed earlier in the provision," *Prichard*, 2025 WL 2163390, at *2, and under *Germain*'s and other courts' reading, that type of notice includes letters issued before the expiration of 180 days,

*see Germain*, 655 F. Supp. 3d at 180; *Huerta*, 2025 WL 674329, at *12 ("[T]here is nothing in the plain text of the statute *prohibiting* the EEOC's early notice regulation."); *see also Loper Bright*, 603 U.S. at 401, 412 ("The very point of the traditional tools of statutory construction — the tools courts use every day — is to resolve statutory ambiguities," and "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority[.]"). Therefore, the EEOC's regulation comports with Title VII's text, and the EEOC's right-to-sue letter here — issued under that regulation before 180 days had elapsed — is valid.

In any event, even if Plaintiff's right-to-sue letter were invalid, the Second Circuit has recognized that obtaining a right-to-sue letter is "not a *jurisdictional* requirement; rather, it is merely a precondition of suit and, accordingly, it is subject to equitable defenses." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015). Accordingly, the absence of right-to-sue letter "can be waived by the parties or the court." *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999); *cf. Asemota v. City of New York*, No. 24-cv-07793 (LAP), 2025 WL 2662301, at *3 n.5 (S.D.N.Y. Sept. 16, 2025) (finding that plaintiff's failure to provide the date on which he received a right-to-sue letter did not bar his claim because "failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition" (citation omitted)). Indeed, "[c]ourts regularly excuse the absence of EEOC right-to-sue letters when plaintiffs have made diligent efforts to obtain such letters and when the failure to obtain such a letter is the fault of the agency, not the plaintiff," and "[t]he precise manner in which the EEOC is at fault is irrelevant." *Sughrim v. New York*, No. 19-cv-07977 (RA) (SDA), 2022 WL 3447545, at *2 (S.D.N.Y. Aug. 17, 2022). Here, if the EEOC exceeded its legal authority by issuing an early right-to-sue letter to Plaintiff, and if, therefore, Plaintiff's

letter is legally invalid, then the onus for that invalidity would rest with the agency for issuing the letter, not with Plaintiff for requesting and receiving it.

For all these reasons, the Court finds that Plaintiff's right-to-sue letter is valid. In the alternative, if it is invalid, the Court waives its requirement here and will permit his Title VII and ADA claims to cross this threshold precondition. Accordingly, the Court proceeds to the merits of Plaintiff's claims.

## II. The First Cause of Action: ADA Discrimination and Retaliation

The Court, taking Plaintiff's causes of action in turn, begins with the first: discrimination and retaliation under the ADA. Both claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) (ADA discrimination); *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (ADA retaliation).

### A. ADA Discrimination

Plaintiff's ADA discrimination claim is rooted in DB's alleged failure to accommodate his disability, and he disclaims any other ADA-discrimination theory. *See* Opp. at 12 n.2. Therefore, he must plead the following: "(1) [He] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Bey*, 999 F.3d at 165 (alteration adopted) (quoting *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)); *accord Raymond v. 1199SEIU Nat'l Benefit Fund*, 184 F.4th 42, 53 (2d Cir. 2026). DB does not contest Plaintiff's pleadings as to the first three elements. *See* Br. at 21-23. With respect to the fourth element, DB appears to concede that it did not grant Plaintiff's accommodation request in August 2024. *See id.* at 22 (arguing that "Plaintiff fails to identify any instance in which he

requested a reasonable accommodation that was denied," "with the exception of the alleged accommodation request in August 2024"). But it alleges that Plaintiff's allegations regarding that request are "vague and conclusory" because Plaintiff has not "identif[ied] to whom the request was submitted or the substance of the request itself." *Id.* at 23. The Court disagrees.[1]

Plaintiff alleges that he first made a work-from-home accommodation request "to his supervisor and to [an] HR representative" in December 2022. Am. Compl. ¶ 50. He further alleges that he "provided medical documentation" in connection with the request. *Id.* ¶ 51. That first request was granted. *Id.* ¶ 52. Plaintiff alleges that he was later granted additional accommodations, *id.* ¶ 53, and it is reasonable to infer that he sought those accommodations in the same way: by submitting requests and medical documentation to his supervisor and an HR representative, *see id.* ¶ 50. The same inference applies to his August 2024 work-from-home accommodation request. *See id.* ¶ 56 (alleging that, in August 2024, Plaintiff "again contacted" DB to request an accommodation). In fact, Plaintiff explicitly alleges that he "submitted additional medical documentation . . . to HR detailing his ongoing need for accommodation" in September 2024, in support of his August 2024 request. *Id.* ¶ 58; *see id.* ¶¶ 56-58. He further alleges that his August 2024 "request was ignored" and, as a result, he "continued to work in the office." *Id.* ¶¶ 57, 60. These allegations are enough to plead the final element of an ADA discrimination claim based on failure to accommodate. *See, e.g.*, *Almeida v. NYU Langone Hosps.*, No. 24-cv-05677 (DLC), 2026 WL 1121909, at *6 (S.D.N.Y. Apr. 24, 2026) ("For a

[1] DB also notes that Plaintiff did not allege the denial of his August 2024 accommodation request in his EEOC charge. *See* Br. at 23. However, DB does not explain why that omission is important or make any legal argument based on it. There appears to be an exhaustion argument to be made here, but, because DB does not raise it, the Court does not address it. *See, e.g.*, *Great Am. E&S Ins. Co. v. Arthur J. Gallagher & Co.*, No. 25-cv-05406 (JPO), 2026 WL 2351431, at *7 (S.D.N.Y. Aug. 13, 2026) (noting possibly duplicative claim but declining to address it because defendant "does not urge dismissal of the . . . claims on the basis that they are duplicative").

failure to accommodate claim, the fourth element is met by showing the employer refused to make a reasonable accommodation."); *cf. Hollington v. Ready Set Learn Child Care Ctr. LLC*, No. 22-cv-09908 (JGK) (BM), 2026 WL 2069252, at *9 (S.D.N.Y. June 30, 2026) (finding that plaintiff adequately pleaded failure-to-accommodate claim by alleging that "she asked defendants to extend her medical leave to accommodate her surgery postponement, but that, in response, defendants simply terminated her employment" (citation modified)), *report and recommendation adopted*, 2026 WL 2079420 (S.D.N.Y. July 16, 2026). DB's professed inability to understand Plaintiff's failure-to-accommodate pleadings, *see* Reply at 5-6 ("[T]he allegations are so vague that, if DB's motion is denied, it would have to deny them as it has no idea what Plaintiff is talking about."), does not render them impermissibly vague, and the cases DB cites do not provide otherwise. *See Veras v. N.Y.C. Dep't of Educ.,* No. 22-cv-00056 (JLR) (SN), 2024 WL 3446498, at *3, *5 (S.D.N.Y. July 17, 2024) (dismissing plaintiff's disability discrimination claim where she alleged that defendant had transferred her in retaliation "for previous complaints" she made regarding disability accommodations, but plaintiff provided no factual detail concerning those previous complaints), *aff'd*, No. 24-1956-cv, 2025 WL 2824851 (2d Cir. Feb. 6, 2025) (summary order); *Lee v. Saul*, No. 19-cv-06553 (PGG) (SN), 2020 WL 7029264, at *3 (S.D.N.Y. Aug. 31, 2020) (recommending dismissal of failure-to-accommodate claim where plaintiff alleged merely that defendant "removed reasonable accommodations," "did not have reasonable accommodations," and did not follow "Reasonable Accommodations procedure," without any factual allegations as to what was requested and denied), *report and recommendation adopted in part & modified in part on other grounds*, 2020 WL 5836513, at *1 (S.D.N.Y. Sept. 30, 2020); *see also* Br. at 23 (citing these cases).[2]

---

[2] DB also cites *Stanley v. City Univ. of New York*, No. 18-cv-04844 (PAE), 2023 WL 2714181, at *20 (S.D.N.Y. Mar. 30, 2023) and *Cangro v. N.Y.C. Dep't of Fin.*, No. 23-cv-10097 (LAP),

DB also notes that Plaintiff "does not allege that [his] request was denied; rather, he alleges only that DB did not respond." Br. at 23; *see also* Reply at 6. This is a distinction without a difference. *See Pahuja v. Am. Univ. of Antigua*, No. 11-cv-04607 (PAE), 2012 WL 6592116, at *11 (S.D.N.Y. Dec. 18, 2012) (denying motion to dismiss ADA failure-to-accommodate claim where plaintiff alleged that defendant "ignored his request for an accommodation"); *Valentine v. Brain & Spine Surgeons of N.Y., P.C.*, No. 17-cv-02275 (NSR), 2018 WL 1871175, at *7 (S.D.N.Y. Apr. 16, 2018) (explaining that defendants "need not engage in an overt or direct act to deny an accommodation" under the ADA, and "a [d]efendant's disregard of a request for an accommodation can constitute a denial of the same"); *cf. Garcia v. Univ. of Mount Saint Vincent*, 835 F. Supp. 3d 445, 456 (S.D.N.Y. 2026) (explaining that, for purposes of failure-to-accommodate claim brought under Fair Housing Act and Rehabilitation Act, among other statutes, "[a]n unreasonable delay in processing an accommodation request can constitute a constructive denial of the accommodation"); *Austin v. Town of Farmington*, 826 F.3d 622, 629 (2d Cir. 2016) (same).

Therefore, Plaintiff has plausibly pleaded the fourth element of his failure-to-accommodate claim. And because DB does not otherwise challenge the sufficiency of Plaintiff's pleadings as to this claim, its motion to dismiss the claim is denied.

---

2024 WL 3833971, at *7 (S.D.N.Y. Aug. 14, 2024), *aff'd in part and vacated and remanded in part on other grounds*, 183 F.4th 149 (2d Cir. 2026). *See* Br. at 23. These cases are inapposite, as they do not analyze whether the plaintiffs sufficiently pleaded how and to whom they requested accommodations for purposes of an ADA failure-to-accommodate claim. *See Stanley*, 2023 WL 2714181, at *20 (discussing whether plaintiff had adequately pleaded that his proposed accommodation would have permitted him to perform his essential job functions); *Cangro*, 2024 WL 3833971, at *7 (discussing whether plaintiff adequately pleaded a claim for failure to engage in cooperative dialogue under NYCHRL).

**B. ADA Retaliation**

"The elements of a *prima facie* case of retaliation under [the ADA] are: '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Tafolla*, 80 F.4th at 125 (quoting *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019)). As to the final element, a plaintiff must ultimately show "that 'but for' the disability, the adverse action would not have been taken," and a plaintiff makes that but-for connection either "directly, through evidence of retaliatory animus directed against [him] by the defendant," or indirectly, by "showing that the protected activity was closely followed in time by the adverse employment action." *Id.* at 125-26 (first quoting *Natofsky*, 921 F.3d at 347; then quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); and then quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).

Here, DB challenges only the causation element, and Plaintiff bases that element only on proximity in time. *See* Br. at 25-26; Opp. at 15. "Although 'temporal proximity alone will not be enough to support [a retaliation] claim on summary judgment,' it is sufficient at the pleading stage." *Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20-cv-00675 (PAE), 2021 WL 1225875, at *27 (S.D.N.Y. Mar. 31, 2021) (quoting *Huda v. N.Y.C. Health & Hosps. Corp.*, No. 19-cv-11556 (AJN), 2021 WL 1163975, at *8 (S.D.N.Y. Mar. 26, 2021)).[3] The question, however, is how much time may pass before it ceases to be proximate. The Second Circuit has explained that,

---

[3] *Ahmad* concerned a Title VII retaliation claim, but such a claim is analyzed under the same framework as ADA retaliation claims. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases." (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001))); *accord Osby v. City of New York*, No. 23-cv-01731 (GHW) (JW), 2024 WL 4188323, at *6 n.7 (S.D.N.Y. Sept. 13, 2024).

"[w]hile 'temporal proximity must be very close,' there is no 'bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014) (first quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam); and then quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)); *accord Banks v. Gen. Motors, LLC*, 81 F.4th 242, 277 (2d Cir. 2023). But the consensus among courts in this Circuit, even in the absence of a bright-line rule established by the Second Circuit, is that gaps in time longer than two to three months cease to support causation. *See Suarez v. N.Y. Cnty. Dist. Atty's Off.*, No. 22-cv-10855 (PGG) (OTW), 2025 WL 894516, at *15 (S.D.N.Y. Mar. 24, 2025) ("[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference[.]" (quoting *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019))); *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-cv-00383 (JGLC), 2024 WL 1345741, at *12 (S.D.N.Y. Mar. 29, 2024) ("Courts within the Second Circuit have generally found that a two- to three-month gap 'is sufficiently narrow, at the motion-to-dismiss stage, to satisfy the requisite causal connection.'" (quoting *Murray v. Dutchess Cnty. Exec. Branch*, No. 17-cv-09121 (KMK), 2019 WL 4688602, at *13 (S.D.N.Y. Sept. 25, 2019))); *Zuckerman v. GW Acquisition LLC*, No. 20-cv-08742 (VEC), 2021 WL 4267815, at *17 (S.D.N.Y. Sept. 20, 2021) ("Courts in this District generally find two or three months to be the outer limit for alleging the existence of causation based on temporal proximity.").

Here, Plaintiff requested an accommodation "in or around late August 2024." Am. Compl. ¶ 56. He submitted additional materials regarding that request "[i]n September 2024." *Id.* ¶ 58. DB notified Plaintiff that his job had been relocated at a meeting on December 5, 2024. *Id.* ¶¶ 71-72. The parties agree that this creates a gap of "approximately three months," *see* Br.

at 26; Opp. at 15, but the Court does not join them in their conclusion. Even assuming that the clock started on September 1, 2024, the parties do not explain why DB's merely notifying Plaintiff that his job was "selected for relocation," Am. Compl. ¶ 72, constituted the adverse employment action that stopped that clock. Indeed, Plaintiff was not required to accept or decline that relocation until December 26, 2024, *id.* ¶ 73; the proposed relocation was not scheduled to take effect until January 2, 2025, *id.* ¶ 72(a); and DB later rescinded the relocation before Plaintiff's deadline to decide, *id.* ¶¶ 79-80, 82. Plaintiff's explicit allegation is that DB retaliated against him by "forcing him to relocate from New York, New York to Jacksonville, Florida, which would include a $15,000 reduction in his salary, and constructively terminating his employment." *Id.* ¶ 118. On these pleadings, and under the law, the initial notification of DB's decision (later rescinded) is simply not the adverse employment action. *See Schultz v. Congregation Shearith Israel*, 867 F.3d 298, 307 (2d Cir. 2017) ("We have held that less significant employment actions taken by an employer, such as placing a counseling letter in an employee file, do not constitute adverse employment actions where they have been rescinded."); *Sosa v. N.Y.C. Dep't of Educ.*, No. 18-cv-00411 (PKC) (SJB), 2020 WL 1536348, at *5 (E.D.N.Y. Mar. 31, 2020) (finding that plaintiff had not pleaded an adverse employment action based on a "proposed transfer" that "never actually occurred," even though employer rescinded it "only after [plaintiff] filed a grievance with her union"); *cf. Tyson v. Town of Ramapo*, No. 17-cv-04990 (KMK), 2019 WL 1331913, at *14 (S.D.N.Y. Mar. 25, 2019) (holding that "the only adverse employment action that [p]laintiff has properly alleged is her termination," and not counting her having received "two letters . . . 'threatening' to terminate her employment" (citation omitted)). It was not until January 24, 2025, that DB's HR representative emailed Plaintiff purporting to accept a resignation that Plaintiff allegedly never submitted. Am. Compl. ¶ 87. And even then, the resignation was not immediate: It was scheduled to be "effective

January 29, 2025," *id.*, but DB contacted Plaintiff on February 4, 2025, apparently to again "accept his voluntary resignation," *id.* ¶ 91.

Based on these pleaded allegations, the Court finds the relevant alleged adverse employment action to have occurred in late January 2025, at the earliest, which creates a lapse of approximately five months. That is too long to support an inference of causation. Plaintiff cites only one case in which a court found that a gap of similar length supported causation: *Banks v. General Motors, LLC*. *See* Opp. at 16. But there, on summary judgment, the Second Circuit held that a six-month gap "support[ed] a reasonable inference of causation" in light of the plaintiff's "strong direct evidence" of the defendant's retaliatory intent, recognizing that "the lapse in time between the protected activity and adverse action can be longer" "[w]here temporal proximity is not the only evidence that bears on a causal connection." *Banks*, 81 F.4th at 277-78. As discussed, though, Plaintiff's pleadings include no such direct-evidence allegations here and, therefore, they do not support a longer gap in time. Indeed, Plaintiff's pleadings include contrary allegations that further undermine a retaliatory inference here: DB granted Plaintiff's accommodation requests three times before the August 2024 denial, allowing him to work from home for a period of more than one year (with gaps between) leading up to his final request. *See* Am. Compl. ¶ 53.

Therefore, Plaintiff's ADA retaliation claim is dismissed.

## III. Second and Third Causes of Action: Race Discrimination Under Section 1981 and Title VII

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quoting 42 U.S.C.

§ 2000e-2(a)(1)). Section 1981 similarly "outlaws discrimination with respect to . . . employment," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004), but specifically with respect to racial discrimination, *see Naprstek v. Marriott Int'l*, No. 21-cv-08560 (CM), 2026 WL 1910282, at *18 (S.D.N.Y. July 2, 2026) ("Section 1981 prohibits intentional race-based discrimination in the workplace.").

Discrimination claims under both statutes are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023). At the pleading stage, that framework requires a discrimination plaintiff to allege that he "is a member of a protected class, was qualified [for his position], suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Second Circuit recognizes that discrimination plaintiffs often lack "direct evidence of discriminatory intent" at the pleading stage. *Id.*; *see id.* at 307. Even so, they must "assert enough nonconclusory factual matter to nudge [their] claim across the line from conceivable to plausible to proceed." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (alterations adopted) (quoting *EEOC v. Port Auth.*, 768 F.3d 247, 254 (2d Cir. 2014)). Thus, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [with respect to plaintiff's protected group]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Here, DB does not challenge Plaintiff's pleadings as to his membership in a protected class or his qualifications for his position. Instead, DB argues that Plaintiff has failed to plead an

adverse employment action or a causal link between any such actions and his race. *See* Br. at 10-20. The Court agrees with DB's first argument and, therefore, need not address its second.

Time was that "[a]n adverse employment action [wa]s 'a materially adverse *change* in the terms and conditions of employment . . ., [which] must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (citation omitted) (quoting *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). But that standard "changed with the Supreme Court's decision in *Muldrow* [*v. City of St. Louis*, 601 U.S. 346 (2024)]." *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 90 (S.D.N.Y. 2024) (quoting *Anderson v. Amazon.com, Inc.*, No. 23-cv-08347 (AS), 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024)). There, the Supreme Court held that to be "'[d]iscriminate[d] against' means [to be] treat[ed] worse," and "[n]either that phrase nor any other establishes an elevated threshold of harm." *Muldrow*, 601 U.S. at 347 (citation omitted). Accordingly, after *Muldrow*, a Title VII "plaintiff 'does not have to show that the harm incurred was significant or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.' Instead, the text of Title VII requires only that a [plaintiff] show '*some* harm respecting an identifiable term or condition of employment.'" *Back v. Hapoalim*, No. 24-1064-cv, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order) (alterations adopted) (quoting *Muldrow*, 601 U.S. at 355). Courts in this Circuit have understood *Muldrow* to apply with equal force to Section 1981. *See, e.g.*, *Anderson*, 2024 WL 2801986, at *10 (holding that Section 1981 does not "differ[] from Title VII in some way that justifies a continued materiality rule" after *Muldrow*); *White v. ADP, Inc.*, No. 22-cv-04800 (DEH), 2024 WL 4979203, at *3 (S.D.N.Y. Dec. 4, 2024) (applying *Muldrow* standard to Section 1981 claim); *Smith v. Nat'l Grid USA*, No. 21-cv-06899 (NJC) (LGD), 2025 WL 1248676, at *16 (E.D.N.Y. Apr. 30, 2025) (same). *Muldrow* plainly "imposes a lower

burden" than the previous standard. *Ciotti v. City of New York*, No. 23-cv-10279 (ER), 2025 WL 308022, at *13 (S.D.N.Y. Jan. 27, 2025). But a lower burden is still a burden, and "even under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions." *Mitchell*, 745 F. Supp. 3d at 91.

Plaintiff identifies three alleged adverse employment actions in the Amended Complaint: DB's failure to provide him with adequate HR support for his short-term disability claim, DB's subsequent denial of that claim, and DB's failure to provide him with reasonable accommodation. Am. Compl. ¶¶ 131(a)-(c); *see also id.* ¶¶ 124, 140, 153. In his opposition to DB's motion to dismiss, however, Plaintiff states that "[t]he only adverse action upon which [he] relies for his race discrimination claims is [DB]'s denial of his accommodation." Opp. at 8 n.1. DB responds that even this does not amount to an adverse employment action. *See* Br. at 19-20; Reply at 4-5. Specifically, DB argues that failing to accommodate an employee is not an adverse employment action unless that failure "result[s] in some other adverse employment action that materially alters the employee's working conditions," and DB argues that Plaintiff has not pleaded such an additional adverse action. Br. at 19 (citation omitted). The Court agrees, in part.

DB's argument partly applies the pre-*Muldrow* standard by requiring an additional "material[]" adverse employment action. *See id.* The Court disagrees with that aspect of DB's formulation. But the Court otherwise agrees that a failure to accommodate, in and of itself, is not an adverse employment action, because it does not impact the terms and conditions of a plaintiff's employment. *See, e.g.*, *Rosich v. La Salle Acad.*, No. 24-cv-09183 (JLR), 2025 WL 2410596, at *8 (S.D.N.Y. Aug. 20, 2025) (holding that an "alleged denial of an accommodation" is not an adverse employment action for purposes of a Title VII discrimination claim unless it "result[s] in some *other* adverse employment action'" (quoting *Cangro*, 2024 WL 3833971, at

*3)); *see also Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) (dismissing discrimination claim under Section 1981 and Title VII where plaintiff's allegation that defendants "fail[ed] to provide reasonable accommodations" did not constitute an adverse employment action).

Plaintiff argues that it is only within "the disability discrimination context" that a failure to accommodate does not constitute an adverse employment action. *See* Opp. at 8 (citation omitted). This is so, Plaintiff explains, because "a disability discrimination claim may be brought under a theory of an adverse employment action *or* a failure to provide a reasonable accommodation," and plaintiffs who take the former route must therefore plead some adverse action *other than* a failure to accommodate, which is separately redressable. *Id.* at 8-9. But in *Cangro*, the Second Circuit held more broadly that an employer's failure to accommodate the plaintiff was not an adverse employment action under *Muldrow* with respect to plaintiff's ADA discrimination claim. *See Cangro*, 183 F.4th at 160-61. And, both before and after *Muldrow*, courts have recognized that "the definition of an adverse employment action under Title VII is the same as under the ADA." *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 236 (S.D.N.Y. 2025) (quoting *Richards v. Dep't of Educ.*, No. 21-cv-00338 (LJL), 2022 WL 329226, at *8 (S.D.N.Y. Feb. 2, 2022)); *see also Dixon v. City of New York*, No. 23-cv-08941 (JGK), 2025 WL 50140, at *6 (S.D.N.Y. Jan. 7, 2025); *Imhof v. N.Y.C. Hous. Auth.*, No. 23-cv-01880 (JPC), 2024 WL 3376084, at *9 (S.D.N.Y. July 11, 2024).

Specifically, in *Cangro*, in connection with his ADA disparate treatment discrimination claim, the plaintiff alleged that his employer had "deni[ed] his various requests for accommodation." *Id.* at 160. Indeed, much like Plaintiff here, the plaintiff there had been permitted to work remotely for a period of time, and then his employer required that he return to work in the office. *See Cangro*, 2024 WL 3833971, at *4. The Second Circuit considered the

plaintiff's allegations that the denial of his accommodation request caused him to experience "physical and mental harm," but the court reasoned that those harms "do not constitute 'injury concerning the terms and conditions of [plaintiff]'s *employment*." *Cangro*, 183 F.4th at 161 (alterations adopted) (quoting *Muldrow*, 601 U.S. at 358). The Second Circuit did note, as Plaintiff does here, that "'disparate treatment' and 'failure to make a reasonable accommodation' are distinct theories of discrimination," *id.* (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)), but the court's reasoning does not suggest that it based its decision on that distinction. Rather, *Cangro* contains clear language from the Second Circuit that denying an accommodation request does not impact a plaintiff's employment and, thus, is not an adverse employment action sufficient to support a disparate treatment discrimination claim under the ADA. Accordingly, the Second Circuit has now held that an employee previously granted an accommodation to work from home and subsequently denied the same accommodation, who alleges that he suffered "physical and mental harm" as a result of that denial, does not "plausibly allege an adverse employment action" for purposes of ADA disparate treatment discrimination. *Id.* Those are the facts before this Court as well with respect to Plaintiff's race discrimination claims under Title VII and Section 1981, and therefore *Cangro* directs this Court's decision on this issue.

Plaintiff argues further that accommodation denials are "adverse action[s]" in "the realm of retaliation law . . . , and retaliation claims require a higher bar for adverse actions, [so] it follows that a denial of a request for accommodation is an adverse action for discrimination purposes." Opp. at 9. He is correct that retaliation claims impose a higher bar. *See Muldrow*, 601 U.S. at 357 (explaining that Title VII's retaliation provision "applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm" (citation omitted)). But he overlooks that the higher bar applies to a wider range of conduct. Indeed, retaliatory conduct "is not limited to discriminatory actions that affect the terms and conditions

of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006); *see also Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) ("Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous'; anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" (quoting *Burlington*, 548 U.S. at 67)). As discussed above, however, discriminatory adverse employment actions *are* so limited, and a failure to accommodate, in and of itself, does not qualify. *See Cangro*, 183 F.4th at 160-61.

Therefore, Plaintiff's race discrimination claims under Title VII and Section 1981 are dismissed.

## IV. Fourth and Fifth Causes of Action: Disability and Race Discrimination Under NYSHRL and NYCHRL

### A. Disability Discrimination

Plaintiff also asserts claims for disability discrimination under the NYSHRL and NYCHRL. *See* Am. Compl. ¶¶ 136-44 (NYSHRL); *id.* ¶¶ 145-59 (NYCHRL). Such a claim under the NYSHRL is "generally analyzed under the same standards as govern claims under the ADA," *Lehey v. Northwell Health, Inc.*, No. 23-cv-04708 (PMH), 2024 WL 1703697, at *3 (S.D.N.Y. Apr. 19, 2024), but is treated "more liberal[ly]" following a 2019 amendment to the state statute, *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122-23 (2d Cir. 2024). Indeed, following that amendment, courts must "construe [the NYSHRL], like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof.'" *De Souza v. New York*, 824 F. Supp. 3d 336, 374 (S.D.N.Y. 2026); *see also Mumin v. City of New York*, 760 F. Supp. 3d 28, 44 (S.D.N.Y. 2024) (noting that post-2019 NYSHRL claims "rise and fall with . . . NYCHRL claims" (quoting *Chinchilla v. N.Y.C. Police Dep't*, No. 23-cv-08986 (DEH), 2024 WL 3400526, at *7 (S.D.N.Y. July 12, 2024))). And in describing that liberal standard, the Second Circuit has

explained that federal discrimination statutes create "a *floor* below which the [NYCHRL] cannot fall." *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). Accordingly, a plaintiff who plausibly pleads a disability discrimination claim under the ADA also plausibly pleads that claim under the NYSHRL and NYCHRL. Having found that Plaintiff's ADA discrimination claim survives DB's motion to dismiss, the Court also finds that Plaintiff's NYSHRL and NYCHRL disability discrimination claims survive. *See, e.g.*, *Sullivan v. Study.com LLC*, No. 18-cv-01939 (JPO), 2019 WL 1299966, at *6 (S.D.N.Y. Mar. 21, 2019) ("[B]ecause [plaintiff] has established a plausible violation of the ADA, the [c]ourt must for the same reasons deny [defendant]'s motion to dismiss [plaintiff's] [NYSHRL] and [NYCHRL] claims, each of which is governed by identical or more liberal legal standards." (citation omitted)); *Samuels v. City of New York*, No. 22-cv-01904 (JGK), 2023 WL 5717892, at *8-9 (S.D.N.Y. Sept. 5, 2023) (denying motion to dismiss NYSHRL and NYCHRL disability discrimination claims "because the plaintiff in this case ha[d] alleged sufficient facts to proceed with her ADA and NYSHRL claims"); *Konyukhova v. Walgreen Co.*, No. 24-cv-04390 (VEC) (SA), 2026 WL 1024121, at *17 (S.D.N.Y. Feb. 3, 2026) ("Because the [c]ourt already has found that [p]laintiff has stated a plausible disability discrimination claim under the ADA against [defendant] based on her failure to accommodate and termination allegations, [p]laintiff also has stated disability discrimination claims against [defendant] on those grounds under the NYSHRL and NYCHRL." (citation omitted)), *report and recommendation adopted*, 2026 WL 880381 (S.D.N.Y. Mar. 31, 2026).

Therefore, Plaintiff's disability discrimination claims under the NYSHRL and NYCHRL survive DB's motion to dismiss.

**B. Race Discrimination**

Plaintiff also brings claims for race discrimination under the NYSHRL and NYCHRL. *See* Am. Compl. ¶¶ 136-44 (NYSHRL); *id.* ¶¶ 145-59 (NYCHRL). Given that, as discussed, courts must apply a more liberal construction to the NYSHRL and NYCHRL than to their federal counterparts, the fact that a plaintiff has failed to state a race discrimination claim under Title VII and Section 1981 does not automatically mean that he has failed to state a race discrimination claim under the NYSHRL and NYCHRL. *See Mihalik*, 715 F.3d at 109 (describing NYCHRL as "a 'one-way ratchet'" with respect to federal discrimination statutes (quoting *Loeffler*, 582 F.3d at 278)).

A plaintiff alleging discrimination under these statutes must plead only that his employer "treated [him] less well than other employees on the basis of a protected characteristic." *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 422 (S.D.N.Y. 2023) (quoting *Ayers v. Bloomberg, L.P.*, 165 N.Y.S.3d 554, 557 (N.Y. App. Div. 2022)); *accord Gehlaut v. N.Y.C. Dep't of Educ.*, No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025) (summary order). Importantly, then, neither the NYSHRL nor the NYCHRL requires an adverse employment action within the meaning of *Muldrow* to support a race discrimination claim. As such, the fact that Plaintiff has failed to plead an adverse employment action, *see* Section III, *supra*, has no bearing on his claims under these statutes; indeed, an employer's conduct that does not rise to the level of an adverse employment action may nevertheless suffice to establish that the employer treated a plaintiff less well than his colleagues. *See, e.g.*, *Taylor v. CSC Holdings, LLC*, No. 17-cv-04407 (MKB), 2019 WL 13412420, at *21 (E.D.N.Y. Sept. 30, 2019) (holding that placing an employee on a performance-improvement plan "show[ed] that [p]laintiff was treated 'less well' because it placed [p]laintiff on a disciplinary plan that could have led to his termination," even though placement on a PIP did not constitute adverse employment action for purposes of federal

discrimination statutes). Such is the case here. Plaintiff alleges that DB withheld work-from-home accommodations from him but freely gave the same accommodations to his non-Black colleagues. *See* Am. Compl. ¶¶ 56-57, 63-66. He further alleges that DB failed to provide him with adequate assistance in connection with his application for short-term disability benefits but, again, provided that support to non-Black employees. *See id.* ¶¶ 33-35. Thus, Plaintiff has plausibly pleaded that he was treated less well because of his race. *See, e.g.*, *Weekes v. JetBlue Airways Corp.*, No. 21-cv-01965 (MKB), 2022 WL 4291371, at *2, *13 (E.D.N.Y. Sept. 16, 2022) (denying motion to dismiss NYSHRL and NYCHRL hostile work environment claims where plaintiff alleged supervisors "treated him less well by ignoring his complaints and requests for accommodation"); *cf. Livingston v. City of New York*, 563 F. Supp. 3d 201, 242 (S.D.N.Y. 2021) (holding, at summary judgment, that plaintiff failed to provide evidence supporting his NYCHRL religious-discrimination claim where his "colleague who requested an accommodation for non-religious reasons received treatment similar to [p]laintiff"). The question, then, is whether Plaintiff has adequately pleaded causation. The Court finds he has not.

The NYSHRL and NYCHRL require only that discrimination be a "motivating factor" in the employer's comparatively substandard treatment of the plaintiff. *Davis v. Winston Preparatory Sch.*, No. 21-cv-08209 (PGG), 2025 WL 1795350, at *18 (S.D.N.Y. June 30, 2025) (citation omitted) (NYSHRL); *see also Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256 (GHW), 2020 WL 6274826, at *19-20 (S.D.N.Y. Oct. 14, 2020) (explaining that the NYCHRL requires a plaintiff to "allege that 'unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for' h[is] unequal treatment" (quoting *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40-41 (N.Y. App. Div. 2012))); *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 244 (N.Y. App. Div. 2021) (explaining that NYSHRL requires the same). "In other words, [a p]laintiff must show that []he was treated less

well than other employees at least in part because of h[is] race." *Stanley v. Mt. Sinai Health Sys., Inc.*, No. 21-cv-04619 (VEC), 2023 WL 8355393, at *10 (S.D.N.Y. Dec. 1, 2023). One "recognized method of" making that showing is "argu[ing] that similarly situated employees were treated differently." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010); *accord Adams v. N.Y. State Unified Ct. Sys.*, No. 22-cv-09739 (JMF), 2023 WL 5003593, at *3 (S.D.N.Y. Aug. 4, 2023). Under the NYSHRL and NYCHRL, as under Title VII, a plaintiff taking this route must offer comparators who are "similarly situated in all material respects" to the plaintiff. *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 509 (2d Cir. 2020) (summary order) (quoting *Littlejohn*, 795 F.3d at 312); *see also Buchanan v. City of New York*, 556 F. Supp. 3d 346, 367 n.9 (S.D.N.Y. 2021); *Moukdad v. NYU Langone Health Sys.*, No. 25-cv-02939 (ER), 2026 WL 774270, at *6 (S.D.N.Y. Mar. 18, 2026) ("To allege disparate treatment pursuant to the NYSHRL and NYCHRL, a plaintiff has to show that the coworker comparators are similarly situated to the plaintiff in all material respects.").

Here, Plaintiff alleges that "non-Black employees in [his d]ivision and parallel divisions" were granted "longer and more stable accommodation periods," including "permanent remote or hybrid work arrangements," and were not "forced to repeatedly re-request accommodations." Am. Compl. ¶ 64. According to the Amended Complaint, these other employees "[w]orked in the same or closely related divisions [as Plaintiff] ([AFC] and Regulatory Management)," "[h]eld the same or comparable job titles and levels (Assistant Vice President or Vice President)," "[r]eported to the same or parallel management structures," "[h]ad comparable job responsibilities requiring regulatory knowledge, liaison work, and compliance expertise," "[h]ad similar performance ratings and tenure," "[r]eceived similar compensation ranges," and "[r]equested similar types of medical benefits, leave, or accommodations for serious health

conditions," yet were approved for those benefits or accommodations and "were not subjected to forced relocation or termination." *Id.* ¶ 127. Specifically, Plaintiff identifies four comparators:

- The first ("Comparator 1") is "a white employee in a comparable position" in the "AFC Division [who] was granted a permanent work-from-home arrangement due to a medical condition" "in or around 2023-2024." *Id.* ¶ 65.
- The second ("Comparator 2") is "a white employee in the AFC Division" who (1) had "job responsibilities substantially similar to Plaintiff's, including regulatory liaison work and compliance reporting," (2) earned a salary "comparable" to Plaintiff's, (3) had "similar performance ratings" to Plaintiff's, and (4) "reported to the same management chain as Plaintiff." *Id.* ¶ 127(a). Comparator 2 received "direct assistance from HR" in applying for long-term disability and, ultimately, was granted leave "in or around 2022-2023." *Id.*
- The third ("Comparator 3") is "a non-Black employee" who worked in the AFC Division and had "comparable seniority and job duties" to Plaintiff's. *Id.* ¶ 127(b). Comparator 3 received "active HR facilitation" concerning her application for mental-health related short-term disability benefits, including HR's "personal assist[ance] . . . with completing forms and coordinating with AFLAC." *Id.* Ultimately, Comparator 3 "received full . . . benefits for six months" "in or around 2023." *Id.*
- The fourth ("Comparator 4" and, together with Comparators 1-3, the "Comparators") is a "white employee in a comparable AFC Division position with identical job responsibilities to Plaintiff, including regulatory examination support and compliance monitoring." *Id.* ¶ 127(c). Comparator 4 reported to "the same supervisor as Plaintiff (Ms. Gold) and received comparable performance ratings." *Id.* "[I]n or around 2022-

2023," Comparator 4 "was granted a permanent work-from-home arrangement for medical reasons," specifically "a chronic medical condition (stroke)," based on Comparator 4's "single request with medical documentation." *Id.*

DB contends that Plaintiff has affixed only "[c]onclusory labels" to these comparators, and that such labels are insufficient to satisfy his pleading burden. Br. at 14; *see also id.* at 12-16. The Court agrees.

"Ordinarily, 'whether two employees are similarly situated presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (alterations adopted) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Accordingly, a "[p]laintiff's burden is slight at [the motion to dismiss] stage of litigation." *Mumin*, 760 F. Supp. 3d at 54. Indeed, a plaintiff "need not provide factual allegations that would *definitively prove* such comparators are similarly situated; rather, he or she must merely provide sufficient allegations that would permit the [c]ourt to 'plausibly infer a reasonably close resemblance' between the plaintiff and the alleged comparator." *Florence v. 72andSunny Partners, LLC*, No. 25-cv-07082 (LJL), 2026 WL 2254417, at *14 (S.D.N.Y. Aug. 5, 2026) (quoting *Rodriguez v. Excellus BlueCross BlueShield, Inc.*, No. 22-cv-01050, 2024 WL 196747, at *5 (N.D.N.Y. Jan. 17, 2024)). Plaintiff has not done so here.

The pleadings as to Comparator 1, for example, are threadbare, and Plaintiff's assertion that Comparator 1 had a "comparable position" in Plaintiff's department, Am. Compl. ¶ 65, provides no factual detail "to permit the Court to conclude that [Plaintiff and Comparator 1] are similarly situated in all material respects," *Mumin*, 760 F. Supp. 3d at 54 (finding comparators inadequately pleaded where, among other deficiencies, plaintiff failed to "plead facts regarding . . . what their duties were beyond . . . bare allegation[s]"). Likewise, Plaintiff merely asserts that Comparator 2 had a "comparable" salary and "similar performance ratings" to

Plaintiff's, Am. Compl. ¶ 127(a), and provides no factual detail permitting an assessment of that purported comparability and similarity. *See, e.g.*, *Spires v. MetLife Grp., Inc.*, No. 18-cv-04464 (RA), 2019 WL 4464393, at *12 (S.D.N.Y. Sept. 18, 2019) (collecting cases in which "broad generalizations" of comparability — such as that the plaintiff and comparators did "substantially equal work" or that the plaintiff had "comparable responsibilities and more seniority" than her better-paid comparators — were insufficient to state a claim (citations omitted)). Nor does the Court know what Plaintiff means when he alleges that he and Comparator 2 "reported to the same management chain," Am. Compl. ¶ 127(a), the vagueness of which appears to suggest that the two did not report to the same supervisor. *See, e.g.*, *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) ("In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated."). *But see Radwan v. Manuel*, 55 F.4th 101, 136 (2d Cir. 2022) ("[T]he lack of identical decisionmakers is not necessarily dispositive."). Plaintiff's pleadings as to Comparator 3 and Comparator 4 are slightly more detailed but still rely on conclusory assertions. Comparator 3 allegedly has "comparable seniority and job duties to Plaintiff." Am. Compl. ¶ 127(b). Comparator 4 and Plaintiff allegedly "received comparable performance ratings." *Id.* ¶ 127(c). These, again, are legal conclusions that Plaintiff's factual allegations should allow the Court to draw; they are not, themselves, factual allegations that the Court is bound to accept on DB's motion to dismiss. *See Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15-cv-04507 (AJN), 2016 WL 3950087, at *2 (S.D.N.Y. July 19, 2016) (dismissing NYSHRL and NYCHRL claims where plaintiffs alleged that comparators "were similarly situated to them regarding their pay rates and other terms and conditions of employment," because "[p]laintiffs here have provided nothing more than 'a legal

conclusion couched as a factual allegation,' which the [c]ourt need not assume to be true" (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2007))).

Therefore, Plaintiff fails to raise an inference of discrimination through his purported Comparators, and his race discrimination claims under the NYSHRL and NYCHRL fail.[4] They are accordingly dismissed.

## V. Sixth Cause of Action: Retaliation Under NYCHRL

Plaintiff also brings a claim for retaliation under the NYCHRL. *See* Am. Compl. ¶¶ 160-64. A plaintiff alleging retaliation under the NYCHRL must allege that "(1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." *Reichman v. City of New York*, 117 N.Y.S.3d 280, 286 (N.Y. App. Div. 2020). In short, a plaintiff must allege that he "took an action opposing [his] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citation omitted); *accord Mercado v. Mt. Sinai Beth Israel*, No. 21-cv-10467 (JLR), 2023 WL 5975322, at *16 (S.D.N.Y. Sept. 14, 2023). Here, as with Plaintiff's ADA retaliation claim, DB challenges only the causation element, *see* Br. at 24 & nn.14-15, and Plaintiff relies only on temporal proximity to satisfy that element, *see* Opp. at 15-16. Causation for NYCHRL retaliation claims can also be pleaded through temporal proximity alone. *See Margarita v. Mountain Time Health, LLC*, 240

---

[4] Moreover, because Plaintiff's comparator pleadings fail under the NYSHRL and NYCHRL, they also fail to plead causation for purposes of his Title VII and Section 1981 race discrimination claims, and that is an independent basis to dismiss those federal claims. *See* Section III, *supra*.

N.Y.S.3d 80, 84 (N.Y. App. Div. 2025). But this proximity, too, "must be very close." *Juillet v. City of New York*, 180 N.Y.S.3d 840, 847 (N.Y. Sup. Ct. 2022) (internal quotation marks and citation omitted). And as with Plaintiff's ADA retaliation claim, the temporal gap here is insufficient to plead an NYCHRL retaliation claim, even under the NYCHRL's more liberal "motivating factor" causation standard. *Patterson v. EmblemHealth Inc.*, No. 22-cv-02177 (LTS), 2023 WL 5671531, at *8 (S.D.N.Y. Sept. 1, 2023); *see Buchanan*, 556 F. Supp. 3d at 368-69 (noting that, despite NYCHRL's more liberal standard, plaintiffs must still "plead both a protected activity and a causal connection in order to state a retaliation claim," and dismissing NYCHRL retaliation claim premised only on temporal proximity because "the [c]ourt cannot infer . . . a causal link based on three months' temporal proximity alone").

Therefore, Plaintiff's NYCHRL retaliation claim is dismissed.

## VI. Seventh Cause of Action: Failure to Engage in Cooperative Dialogue Under NYCHRL

As a seventh cause of action, Plaintiff alleges that DB violated the NYCHRL by failing to engage in a cooperative dialogue with him concerning his accommodation needs. *See* Am. Compl. ¶¶ 165-70. The NYCHRL forbids employers from "refus[ing] or otherwise fail[ing] to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation." *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-07190 (JMF), 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024) (quoting N.Y.C. Admin. Code § 8-107(28)(a)). A cooperative dialogue, under the NYCHRL, is "the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including

alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102.

In seeking to dismiss Plaintiff's cooperative dialogue claim, DB again argues that it is too vaguely pleaded because, DB says, Plaintiff fails to allege to whom he made his August 2024 accommodation request, fails to allege "the substance of any purported dialogue," and fails to allege "any facts supporting an inference that DB refused to engage in the cooperative dialogue required by the NYCHRL." Br. at 27; *see also* Reply at 9.[5] The Court has already rejected DB's vagueness argument, *see* Section II.A, *supra*, and that analysis applies in equal force here. DB's remaining arguments are unavailing. Plaintiff alleges that he requested an accommodation in August 2024, and that DB ignored it entirely. *See* Am. Compl. ¶¶ 56-57. Indeed, after Plaintiff submitted his request, and even after he submitted additional medical documentation in support of it, DB allegedly "did not schedule an interactive process meeting, did not request clarification about Plaintiff's needs, did not propose alternative accommodations, and did not provide any written explanation for why a continued or permanent work-from-home arrangement was not feasible." *Id.* ¶ 59. It is unclear how Plaintiff should allege "the substance" of a dialogue that allegedly never occurred in connection with this request, Br. at 27, or what other facts he should allege to plead that DB failed to engage in any dialogue with him at all. To the contrary, this claim is adequately pleaded. *See, e.g.*, *Rizzo*, 2024 WL 3274455, at *4 (denying motion to dismiss failure to engage in cooperative dialogue claim where plaintiff alleged that he "called [his employer] for guidance" on its "request for supplemental information" concerning his accommodation "and never heard back," that his employer "denied his request for

[5] DB also notes again that Plaintiff's allegations concerning the denial of his August 2024 accommodation request do not appear in his EEOC charge, and again fails to raise any legal argument on the basis of that omission. *See* Br. at 27. Thus, the Court again declines to address it.

accommodation in conclusory fashion," and that plaintiff "never received a response" after attempting to contact his employer's in-house counsel for an explanation (citations omitted)); *Lee v. N.Y.C. Fire Dep't*, No. 24-cv-04772 (VMS), 2025 WL 2772855, at *5 (E.D.N.Y. Sept. 29, 2025) (denying motion to dismiss failure to engage in cooperative dialogue claim where plaintiff alleged, among other things, that defendant sent only a "'boilerplate' denial of her request" and that "her request for further information from [her employer] was unanswered" (citation omitted)).

Therefore, Plaintiff's NYCHRL cooperative dialogue claim may proceed.

## VII. Back Pay and Front Pay

Finally, DB argues that the Court should dismiss Plaintiff's request for back pay and front pay damages, because DB rescinded Plaintiff's termination or reinstated Plaintiff. Br. at 28. Plaintiff argues that his entitlement to back and front pay requires further factual consideration. Opp. at 18. The Court agrees with Plaintiff, in a sense: DB's motion to dismiss the request for back and front pay is denied because it is premature.

Back and front pay are not causes of action: They are types of damages. Therefore, they are not the proper subject of a motion to dismiss, and the Court does not reach them on DB's motion. *See Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220-21 (S.D.N.Y. 2019) (declining to dismiss "the prayer for punitive damages" because "[a] motion to dismiss is addressed to a 'claim' — not to a form of damages." (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010))); *accord Henderson v. Golden Corral Franchising Sys., Inc.*, 663 F. Supp. 3d 313, 333-34 (S.D.N.Y. 2023); *see also Monroe v. Buzzfeed, Inc.*, No. 23-cv-06324 (CM), 2024 WL 4350964, at *7-8 (S.D.N.Y. Sept. 30, 2024) (denying motion to dismiss "claim for statutory damages, attorneys' fees, and costs" as "premature," because "[m]otions to dismiss are properly addressed to causes of action, not forms

of relief"); *cf. Cardwell*, 2023 WL 2049800, at *37 ("Courts have the power to separate the issues of liability and damages and grant *summary judgment* as to either." (emphasis added)). Therefore, DB's motion to dismiss these damages is denied.

## CONCLUSION

For the foregoing reasons, DB's motion to dismiss is GRANTED in part and DENIED in part. Specifically, Plaintiff's claims for ADA retaliation, Title VII and Section 1981 race discrimination, NYSHRL and NYCHRL race discrimination, and NYCHRL retaliation are all dismissed. DB's motion to dismiss Plaintiff's claims for disability discrimination under the ADA, NYSHRL, and NYCHRL; Plaintiff's claim for failure to engage in a cooperative dialogue under the NYCHRL; and Plaintiff's requested relief of back and front pay is DENIED.

DB shall answer the remaining aspects of the Amended Complaint by **October 12, 2026**. The Clerk of the Court is respectfully directed to terminate the motion at Dkt. 45.

Dated: September 28, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge